**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **FIESTA MART, L.L.C.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Case No.: _____** |
| | § | |
| **GOOSE CAP ENTERPRISES, LLC** | § | **TRIAL BY JURY DEMANDED** |
| | § | |
| **Defendant.** | § | |

---

## ORIGINAL COMPLAINT

---

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Fiesta Mart, L.L.C. (hereinafter "Fiesta Mart"), for its trademark infringement complaint against Defendant Goose Cap Enterprises, LLC (hereinafter "Goose Cap"), alleges as follows:

## NATURE OF THE CASE

1.      This lawsuit arises out of Goose Cap's improper use of Fiesta Mart's valuable trademarks in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1116-17, and 1125; the Texas Business and Commerce Code § 16.103; and in breach of the parties' trademark agreement ("Trademark Agreement"), which has terminated.  The Trademark Agreement is attached hereto as Exhibit A.

2.      Fiesta Mart owns and operates more than 50 retail grocery stores in the Houston, Austin, and Dallas-Fort Worth markets.  Fiesta Mart serves customers from over 90 countries of origin.  Fiesta Mart's "open market" layout and large variety of products and services appeal to Houston's large international community.  Fiesta Mart operates its grocery stores under the Fiesta

1

Mart trademarks.  A copy of the federal registrations for Fiesta Mart's trademarks—dating back to at least 1984—is attached hereto as Exhibit B.[1]  Pursuant to 15 U.S.C. § 1065, Fiesta Mart's right to use the federally-registered trademarks in connection with the above-referenced services has become incontestable. Examples of Fiesta Mart's federally-registered trademarks include:

   

3.     Fiesta Mart's customers associate Fiesta Mart's trademarks with quality products and exceptional service.  Fiesta Mart has worked hard for decades to develop its goodwill and reputation in the community.

4.     Up until June 15, 2020, Fiesta Mart also managed a number of liquor stores that Fiesta Mart did not own, but which operated using Fiesta Mart's trademarks, such as:

LIQUORS                              BEVERAGE MART

5.     With the exception of one location, the liquor stores are adjacent to Fiesta Mart grocery stores and use the same parking lot.  Fiesta Liquors, Inc. ("Liquors, Inc.") – which had no affiliation with Fiesta Mart – owned the liquor stores for a period of time, and in February 2016 sold the liquor stores to Goose Cap.  Upon the closing of the liquor store sale to Goose Cap in May 2016, Fiesta Mart and Goose Cap entered into a May 2016 management agreement (the "Management Agreement") for Fiesta Mart to manage those liquor stores for Goose Cap – just as

---

[1] All trademarks listed in Exhibit B are actively registered, except for registration number 3,008,777.

Fiesta Mart had done for Liquors, Inc.  On the same day that the parties executed the Management Agreement, they also executed the Trademark Agreement.  The Trademark Agreement granted Goose Cap a revocable, royalty-free license to use Fiesta Mart's trademarks identified above to promote Goose Cap's liquor store business, such as on store signs and in promotional materials. Both the Management Agreement and Trademark Agreement were to remain in effect indefinitely unless terminated by the parties.

6.     After May 2016, Fiesta Mart began managing Goose Cap's liquor stores and allowed Goose Cap to use Fiesta Mart's trademarks to promote Goose Cap's liquor store business. Starting in November 2017, Goose Cap improperly refused to pay Fiesta Mart the service fees Fiesta Mart was owed for managing the liquor stores.  Despite not being compensated for managing the liquor stores, Fiesta Mart nevertheless continued to manage them and continued to allow Goose Cap to use Fiesta Mart's trademarks to operate its liquor stores.

7.     Then, in order to try to avoid paying Fiesta Mart the service fees it is owed for managing the liquor stores, Goose Cap filed a baseless lawsuit in June 2019 against Fiesta Mart in the District Court of Harris County, Texas (case number 2019-4417).[2]  Goose Cap alleged that Fiesta Mart had not been properly managing the liquor stores in breach of the Management Agreement.  Goose Cap also alleged that Fiesta Mart had made fraudulent and negligent representations to induce Goose Cap to purchase the liquor stores from Liquors, Inc. – which had no affiliation with Fiesta Mart.  As damages, Goose Cap seeks to avoid paying Fiesta Mart the service fees it is owed for managing the liquor stores and seeks to recover from Fiesta Mart (which was not the seller of the liquor stores) the amount by which Goose Cap claims it overpaid to

---

[2] Fiesta Mart moved to compel arbitration of Goose Cap's lawsuit.  The trial court denied Fiesta Mart's motion to compel arbitration, and Fiesta Mart appealed.  The appeal is pending in the 14th Court of Appeals in Houston, Texas (case number 14-20-00285-CV).

purchase the liquor stores.  Goose Cap's claims are baseless.  Fiesta Mart properly managed the liquor stores and did not make any misrepresentations to Goose Cap to induce it to purchase the liquor stores.  Fiesta Mart was not even the seller of the liquor stores, so it had no reason to induce Goose Cap to purchase the liquor stores.

8.       By letters dated February 20, 2020, and May 1, 2020, Fiesta Mart provided notice to Goose Cap that Goose Cap was in material breach of the Management Agreement for failure to pay Fiesta Mart the service fees it is owed.  Fiesta Mart explained that if Goose Cap did not pay Fiesta Mart in full by June 15, 2020, the Management Agreement and Trademark Agreement would be terminated effective as of that date and that Fiesta Mart would be forced to bring legal proceedings against Goose Cap to enforce its rights.  By letter dated May 4, 2020, Goose Cap agreed to terminate the Management Agreement effective as of June 15, 2020.[3]  However, Goose Cap continues through the present day to improperly use Fiesta Mart's trademarks, including on its liquor store signs and in promotional materials.

9.       In a final effort to resolve this dispute without litigation, Fiesta Mart sent Goose Cap a letter dated September 24, 2020 again confirming that the Trademark Agreement terminated effective as of June 15, 2020 and demanding that Goose Cap confirm that it will cease making any use of Fiesta Mart's trademarks.[4]  As of the date of the filing of this Complaint, Goose Cap has not responded to Fiesta Mart's letter and continues to improperly use Fiesta Mart's trademarks without a license.  Thus, Fiesta Mart has been forced to file this lawsuit to protect and enforce its valuable trademark rights.

---

[3] Since June 15, 2020, Fiesta Mart has no longer been managing the liquor stores for Goose Cap.
[4] Fiesta Mart's September 24, 2020 letter is attached hereto as Exhibit B.

## PARTIES

10.     Plaintiff, Fiesta Mart, is a Texas limited liability company with principal place of business at 5444 Westheimer Road, Suite 101, Houston, Texas.

11.     Defendant, Goose Cap, is a Texas limited liability company with principal place of business at 3 Riverway, Suite 850, Houston, Texas.  Goose Cap may be served with process on its registered agent, Oniel C. Mendenhall Jr.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).  The Court has supplemental jurisdiction over the Texas state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367 because those claims are sufficiently related to the federal claims as to form part of the same case or controversy.

13.     Personal jurisdiction and venue are proper over Goose Cap in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to this action, and upon which the allegations in this Complaint are based, occurred in this District and because Goose Cap is headquartered in this District.

## FACTUAL ALLEGATIONS

### A.     Past Ownership and Management of the Liquor Stores

14.     Fiesta Mart is a Texas-based grocery store chain, founded in Houston in 1972. Fiesta Mart owns and operates more than 50 retail grocery stores in the Houston, Austin, and Dallas-Fort Worth markets.  Fiesta Mart serves customers from over 90 countries of origin.  Fiesta Mart's "open market" layout and large variety of products and services appeal to Houston's large international community.

15.     Prior to January 2015, 2ML Real Estate Interests, Inc. ("2ML") owned Fiesta Mart, as well as a group of liquor stores that operated under the name Liquors, Inc.  Fiesta Mart operated the liquor stores owned by 2ML.

16.     In early 2015, 2ML sold Fiesta Mart to a private equity firm called ACON (and ACON later sold the Fiesta Mart grocery stores to its current owner).  When 2ML sold the grocery stores to ACON, it did not sell the liquor stores.

17.     After 2ML sold the grocery stores, it continued to have Fiesta Mart manage the liquor stores that 2ML continued to own under the name Liquors, Inc.

18.     In early 2016, Goose Cap entered into a series of agreements by which it purchased 17 liquor stores in Houston, Texas, from Liquors, Inc.  On February 25, 2016, Goose Cap signed a purchase agreement with Liquors, Inc. for the liquor stores (the "Purchase Agreement").  On February 25, 2016, Goose Cap also executed a letter agreement with Fiesta Mart (the "Letter Agreement").

19.     The Letter Agreement described a number of contracts that Goose Cap and Fiesta Mart would execute upon the closing of Goose Cap's purchase of the liquor stores.  The agreements identified in the Letter Agreement that Goose Cap would execute with Fiesta Mart at the closing included: (1) a Management Agreement under which Fiesta Mart would continue to manage the liquor stores for Goose Cap, just as it had done for Liquors, Inc., (2) the Trademark Agreement granting Goose Cap a revocable, royalty-free license to use Fiesta Mart's trademarks in connection with Goose Cap's ownership and operation of the liquor stores, (3) Sublease Agreements by which Fiesta Mart subleased each liquor store to Goose Cap, and (4) a Noncompetition Agreement under which Fiesta Mart agreed not to compete with Goose Cap's liquor stores for a certain period of time.

6

20.     Goose Cap signed the Letter Agreement with Fiesta Mart, which provided that the parties would execute a number of agreements at the closing, in order to ensure the smooth transition of the operation of the liquor stores after Goose Cap acquired them from Liquors, Inc.

21.     The interrelated agreements that Goose Cap executed were all designed to facilitate a smooth transfer of ownership and operation of the liquor stores to Goose Cap. Without the Management Agreement, Goose Cap would have no one to continue to operate its liquor stores after it purchased them.  And without the Trademark Agreement, Goose Cap would have no license to continue the use Fiesta Mart's trademarks in operating the liquor stores after it purchased them from Liquors, Inc.

### B.     Fiesta Mart's Management of the Liquor Stores for Goose Cap

22.     Upon the closing of Goose Cap's purchase of the liquor stores from Liquors, Inc. on May 16, 2016, Goose Cap and Fiesta Mart executed the Management Agreement.  Thereafter, Fiesta Mart began to manage the liquor stores for Goose Cap.

23.     The Management Agreement did not have a set termination date, but rather would remain in effect until terminated by the parties pursuant to the terms of the Management Agreement.[5]

24.     In consideration for Fiesta Mart's management services, Goose Cap agreed in the Management Agreement to pay Fiesta Mart a service fee equal to 1.5% of the total revenue received from goods sold at the liquor stores.  Management Agreement at § 3.02.

25.     Fiesta Mart has fully performed all services required under the Management Agreement since May 16, 2016.

---

[5] Section 2.03 of the Management Agreement provided for an initial term of five years and automatic renewal for four periods of three years.

26.     However, Goose Cap has not paid Fiesta Mart the 1.5% service fee required under the Management Agreement since November 2017, and owes Fiesta Mart $1,052,853.26 for unpaid past due service fees.

**C.     The Trademark Agreement**

20.     On the closing of Goose Cap's purchase of the liquor stores from Liquors, Inc., which was May 16, 2016, Goose Cap and Fiesta Mart executed the Trademark Agreement.

21.     The Trademark Agreement grants Goose Cap, "on a royalty-free basis, a non-exclusive, nontransferable and *revocable* right and license to use [Fiesta Mart's] Licensed Marks" in connection with the liquor stores.  Ex. A at § 1(a) (emphasis added).  The license is "indefinite[]" in duration.  *Id.* at 6(a).  Thus, like the Management Agreement, the Trademark Agreement does not have a set termination date.

27.     Goose Cap did not pay any money to Fiesta Mart or provide anything else of value to Fiesta Mart in exchange for this indefinite and royalty-free license to use Fiesta Mart's licensed marks.  Rather, the consideration that Fiesta Mart was supposed to receive from Goose Cap for granting Goose Cap a "royalty free" trademark license was the ongoing payment of management fees under the parties' Management Agreement.

28.     Fiesta Mart is the owner of all right, title, and interest in and to the "Fiesta" mark in the United States covered by the trademarks identified in Attachment A to the Trademark Agreement (the "Trademarks").  These Trademarks include:

| Mark | Design | Reg. No. | Reg. Date |
|------|--------|----------|-----------|
| FIESTA (word and design) |  | 3,008,777[6] | 10/25/2005 |
| FIESTA (word and design) |  | 1,293,396 | 9/4/1984 |
| FIESTA (stylized) |  | 1,291,516 | 8/21/1984 |
| FIESTA (design plus word) |  | 1,224,622 | 1/18/1983 |
| FIESTA (word mark) | FIESTA | 1,300,985 | 10/16/1984 |
| (design only) |  | 1,212,800 | 10/12/1982 |

29.     Except for Trademark No. 3,008,777, all Trademarks listed in Attachment A to the Trademark Agreement are active, incontestable, and have been continuously used in commerce since at least as early as 1984.

---

[6] This trademark is not federally registered.

9

30.    Fiesta Mart has advertised and publicized its Trademarks throughout the state of Texas for over 35 years, including through commercials, signage, direct mail marketing, digital marketing, and sponsorship of professional sports teams like the Houston Astros.

31.    The Trademark Agreement gives Goose Cap a revocable license to use the Trademarks shown in Attachment B to the Trademark Agreement ("the Licensed Marks") in connection with Goose Cap's ownership and operation of the liquor stores.  Examples of the Licensed Marks include:

 LIQUORS                    BEVERAGE MART

**D.    Goose Cap's Lawsuit Against Fiesta Mart**

32.    Unhappy with the price it paid to Liquors, Inc. to acquire the liquor stores and in an effort to avoid paying Fiesta Mart the service fees it is owed for managing the liquor stores, Goose Cap filed a lawsuit against Fiesta Mart[7] on June 27, 2019 in Harris County, Texas, which remains pending.  The lawsuit asserts four baseless counts against Fiesta Mart: (1) breach of the Management Agreement, (2) fraudulent inducement, (3) negligent misrepresentation, and (4) and declaratory judgment.[8]

---

[7] Liquors, Inc. dissolved as of February 28, 2019, so it was not possible for Goose Cap to bring its claims against Liquors, Inc.—the prior owner and seller of the liquor stores—so Goose Cap brought a baseless lawsuit against Fiesta Mart.

[8] The only time the Trademark Agreement is mentioned in Goose Cap's state court lawsuit is once in the Declaratory Judgment count and in the prayer for relief.  In its June 2019 complaint, Goose Cap sought a "[d]eclaration that the Trademark Agreement between Fiesta Mart and Goose Cap remains enforceable."  At the time Goose Cap filed its complaint in June 2019, there was no dispute that the Trademark Agreement was in effect and Goose Cap did not allege any breach of the Trademark Agreement.  However, effective as of June 15, 2020, Fiesta Mart has terminated the Trademark Agreement.  Since June 15, 2020 and continuing to this day, Goose Cap has been infringing on Fiesta Mart's Trademarks, which has forced Fiesta Mart to file this lawsuit.

33.     In the lawsuit, Goose Cap claims that Fiesta Mart failed to provide adequate services in breach of the Management Agreement.  Goose Cap made wide-ranging allegations concerning Fiesta Mart's purported breaches of the Management Agreement, including that Fiesta Mart provided inaccurate accounting services, delivered late payments to vendors, failed to provide an annual budget, ordered unnecessary repair work, failed to rebid or negotiate lower cost service contracts with vendors, allowed information technology service contracts to lapse, failed to provide adequate security, and failed to hire enough employees to adequately staff the liquor stores.  As damages, Goose Cap sought to avoid paying Fiesta Mart the service fees it is owed as well as other purported damages.  Goose Cap's allegations are baseless.

34.     Fiesta Mart has fully and properly performed all services required of it under the Management Agreement.  Goose Cap has breached the Management Agreement because, starting in November 2017, Goose Cap improperly refused to pay Fiesta Mart the 1.5% service fee it was owed.

35.     Goose Cap also alleges in its lawsuit that Fiesta Mart—which solely managed the liquor stores and did not own them—made unspecified intentional and negligent representations to Goose Cap to induce it to purchase the liquor stores.[9]  Fiesta Mart disputes that it made any

---

[9] Goose Cap acquired the liquor stores from Liquors, Inc. pursuant to the Purchase Agreement, and Goose Cap also executed a Letter Agreement with Fiesta Mart on the same day it executed the Purchase Agreement.  The Letter Agreement identifies a number of documents that Goose Cap and Fiesta Mart would execute upon the closing of Goose Cap's purchase of the liquor stores.  Those agreements are "Transaction Documents," as defined in the Purchase Agreement.  Section 12.4 of the Purchase Agreement provides that all disputes relating to the "Transaction Documents" must be resolved by mandatory arbitration.  When Fiesta Mart moved to compel arbitration in the trial court, arguing that the agreements in the Letter Agreement are "Transaction Documents" subject to mandatory arbitration, Goose Cap disagreed and opposed arbitration.  The trial court denied Fiesta Mart's motion to compel arbitration and Fiesta Mart appealed.  Fiesta Mart's appeal remains pending.

The Trademark Agreement is also a Transaction Document.  While disputes relating to the Trademark Agreement are subject to mandatory arbitration, the trial court has held to the contrary and therefore, Fiesta Mart has filed this suit to preserve its substantive rights.  Moreover, requests for injunctive relief are carved out from the arbitration provision of the Purchase Agreement.  Purchase Agreement at § 12.4(a)(iv).  Thus, Fiesta Mart's request for injunctive relief in this lawsuit is properly before this Court.

false representations to Goose Cap, let alone any false representations to induce Goose Cap to purchase the liquor stores from Liquors, Inc.  Goose Cap's allegations are baseless.

      **E.**      **Termination of Management Agreement and Trademark Agreement.**

36.      The Trademark Agreement gives Fiesta Mart the right to revoke at any time its license for Goose Cap to use Fiesta Mart's Licensed Marks.  Fiesta Mart exercised its right to revoke its license after the parties agreed to terminate the Management Agreement.

37.      By letter dated February 20, 2020, Fiesta Mart provided notice to Goose Cap that Goose Cap was in material breach of the Management Agreement for failure to pay the service fee to Fiesta Mart.  At that time, Goose Cap had not paid Fiesta Mart for managing the liquor stores for over 27 months—since November 2017.  Fiesta Mart informed Goose Cap that if Goose Cap did not cure its material breach within thirty days, Fiesta Mart reserved its right to terminate the Management Agreement and the Trademark Agreement.  Goose Cap did not respond to this letter.

38.      By letter dated May 1, 2020, Fiesta Mart again demanded that Goose Cap pay Fiesta Mart in full the outstanding service fee that Goose Cap owed.  Fiesta Mart informed Goose Cap that Fiesta Mart "remains willing to continue managing the liquor stores, but it must be compensated for doing so as provided by the parties' Management Agreement."  Fiesta Mart explained that if Goose Cap did not pay Fiesta Mart in full by June 15, 2020, Fiesta Mart would terminate the Management Agreement and Trademark Agreement effective as of that date, cease managing the liquor stores, and take appropriate legal action against Goose Cap.

39.      By letter dated May 4, 2020, Goose Cap agreed to terminate the Management Agreement effective as of June 15, 2020, and stated that Goose Cap "will begin the transition of the liquor stores' management to Goose Cap."  Thus, the Management Agreement terminated on

June 15, 2020.  However, Goose Cap continued to improperly use Fiesta Mart's Licensed Marks to operate its liquor stores after June 15.

40.     Accordingly, in a final effort to avoid litigation, Fiesta Mart sent Goose Cap a letter dated September 24, 2020 attached hereto as Exhibit C.  In that letter, Fiesta Mart again made clear that the Trademark Agreement terminated as of June 15, 2020 and that Goose Cap has no right to use Fiesta Mart's Licensed Marks to operate and promote Goose Cap's liquor store business.  Fiesta Mart demanded that Goose Cap confirm by 3:00 P.M. Central Time on September 25, 2020 that it would cease using all of Fiesta Mart's Licensed Marks within 30 days.  The letter warned that if Goose Cap did not immediately confirm that it would stop infringing on Fiesta Mart's Licensed Marks, Fiesta Mart would be forced to bring legal proceedings against Goose Cap to protect Fiesta Mart's valuable Trademarks.  Goose Cap did not respond to Fiesta Mart's letter.   Accordingly, Fiesta Mart was forced to bring this lawsuit.

**F.     Fiesta Mart Properly Terminated the Trademark Agreement**

41.     Fiesta Mart properly terminated the Trademark Agreement on three independent grounds.

42.     First, by its express terms, the license Fiesta Mart granted to Goose Cap was "revocable" and Fiesta Mart has now revoked that license.

43.     Second, to the extent that Goose Cap contends that the license is indefinite, under Texas law, which governs the Trademark Agreement, indefinite licenses are terminable at will. Thus, because the Trademark Agreement is indefinite and terminable at will, Fiesta Mart also properly terminated the Trademark Agreement.

44.     Finally, the Trademark Agreement was terminable for failure of consideration. When Goose Cap acquired the liquor stores from Liquors, Inc., it executed a series of interrelated

agreements with Fiesta Mart, which included the Management Agreement for Fiesta Mart to manage the liquor stores indefinitely and a Trademark Agreement granting Goose Cap a license to use Fiesta Mart's Trademarks indefinitely.  Goose Cap did not pay any money to Fiesta Mart or provide anything else of value to Fiesta Mart when it executed the Trademark Agreement. Rather, the consideration that Fiesta Mart was supposed to receive from Goose Cap for granting Goose Cap a "royalty free" trademark license was the ongoing payment of services fees under the parties' Management Agreement, which had been entered into on the same day as the Trademark Agreement.  Goose Cap stopped paying Fiesta Mart its service fees in November 2017 and the Management Agreement has now terminated effective as of June 15, 2020. Because Goose Cap refused to pay Fiesta Mart the service fees it owed to Fiesta Mart for managing the liquor stores and because the Management Agreement has terminated, depriving Fiesta Mart of the service fees it was entitled to earn in the future for managing the liquor stores, the Trademark Agreement is terminable for lack of ongoing consideration.

### F. Goose Cap's Continued Improper Use of Fiesta Mart's Licensed Marks Could Irreparably Damage Fiesta Mart's Reputation and the Goodwill Associated with Fiesta Mart's Valuable Trademarks.

45.     Despite Fiesta Mart's termination of the Trademark Agreement, Goose Cap has improperly refused to cease using Fiesta Mart's Licensed Marks.  Unless enjoined, Goose Cap's ongoing unauthorized use of Fiesta Mart's Licensed Marks, including on liquor store signs and in advertising, stands to irreparably harm Fiesta Mart's business, reputation, and goodwill, and decrease the value of Fiesta Mart's Trademarks.

46.     Fiesta Mart revoked its license for Goose Cap to use Fiesta Mart's Licensed Marks because Fiesta Mart is no longer managing and operating those liquor stores, and therefore no longer has the ability to protect its Trademarks.  Fiesta Mart was willing to grant

Goose Cap a license to use Fiesta Mart's valuable Trademarks while Fiesta Mart was solely responsible for managing the liquor stores, because Fiesta Mart was able to protect its valuable Trademarks and its reputation by providing the same level of customer service to the liquor stores' customers that Fiesta Mart provides to its grocery store customers.  But now that the Management Agreement has terminated and Fiesta Mart is no longer operating the liquor stores, Fiesta Mart has no way to ensure that the valuable goodwill associated with its Trademarks is protected.

47.     Fiesta Mart's concerns that Goose Cap's management of the liquor stores may tarnish Fiesta Mart's reputation and the value of its Trademarks are not conjecture.  Ever since Goose Cap began managing the liquor stores itself on June 15, 2020, Goose Cap has experienced one problem after another.  In a string of emails to Fiesta Mart's CEO, Carlos Smith, and CFO, Jack Hook, beginning on June 17, 2020 – just two days after Goose Cap took over management of the liquor stores – Goose Cap's owner and president, Oniel Mendenhall, Jr., repeatedly asked permission for liquor store customers to use the bathrooms in Fiesta Mart's connected grocery stores.  Mr. Mendenhall also requested permission for Goose Cap to use the mop sinks in Fiesta Mart's grocery stores.  Goose Cap described the requests as a "pressing matter" because the coronavirus pandemic was "causing much more emphasis on sanitation and cleanliness" and stated: "The waterless cleaner is not cutting it at all.  With all this rain the floors are getting worse and starting to affect business."

48.     Customers of the liquor stores may (incorrectly) continue to associate the liquor stores' with Fiesta Mart's grocery stores even though Fiesta Mart is no longer operating those liquor stores and has no affiliation whatsoever with the liquor stores.  If Goose Cap fails to continue to provide the same high level of customer service and store cleanliness that Fiesta Mart

provided when it managed the liquor stores—which as shown by the emails above is plainly a legitimate concern—those liquor store customers may develop a negative view of the Fiesta Mart brand, thus irreparably harming Fiesta Mart's grocery store business.

49.     Goose Cap simply has no right to continue to use Fiesta Mart's valuable Licensed Marks now that Fiesta Mart has terminated the Trademark Agreement.

50.     In fact, the Trademark Agreement recognized the importance of Goose Cap operating its liquor stores so as to not harm Fiesta Mart's reputation or damage the value of Fiesta Mart's Trademarks.  To that end, the Section 4(a) of the Trademark Agreement provided that Goose Cap must operate its liquor stores in a manner that reflects positively on Fiesta Mart, providing:

> Licensee [Goose Cap] acknowledges that the quality of the goods and services provided by Licensee [Goose Cap] in connection with the Licensed Marks will impact the goodwill and business reputation of Licensor [Fiesta Mart].  Licensee [Goose Cap] shall use its best efforts to conduct its business in a manner that will reflect positively on the Mark.

51.     The Trademark Agreement also provided that Goose Mark agreed that:

> [I]t will not use the Licensed Marks in a manner that will demean [Fiesta Mart], nor in any way that might jeopardize, adversely affect, tarnish or dilute [Fiesta Mart's] proprietary interest in the Licensed Marks or the value of the Mark, or take any action that would interfere with or diminish those rights or value.

Ex. A at § 5(g).

52.     Unless an injunction is issued enjoining Goose Cap's improper use of the Trademarks and Licensed Marks, Fiesta Mart will continue to suffer irreparable harm.  As Goose Cap acknowledged in the Trademark Agreement, any unauthorized use of the Licensed Marks "would cause [Fiesta Mart] irreparable damage, inadequately compensable by monetary damages."  Accordingly, Fiesta Mart seeks injunctive relief to prevent Goose Cap's unauthorized use of Fiesta Mart's Trademarks and Licensed Marks.

## COUNT I

### FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))

53.     Fiesta Mart re-alleges and incorporates into count one, paragraphs 1-52.

54.     Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits any person from using in commerce, without the consent of the registrant, any trademark or any reproduction, counterfeit, copy, or colorable imitation thereof in connection with the marketing, advertising, distribution, or sale of goods or services which is likely to result in confusion, mistake, or deception.

55.     Section 32(1)(b) of the Lanham Act, 15 U.S.C. § 1114(1)(b), prohibits any person from reproducing, counterfeiting, copying, or colorably imitating a trademark in labels, signs, prints, packages, or advertisements in connection with the advertising, distribution, or sale of goods or services which is likely to result in confusion, mistake, or deception.

56.     Fiesta Mart's ownership of the federally-registered Trademarks[10] in Attachment A to the Trademark Agreement is undisputed, and those federally-registered Trademarks have been used in commerce and known by consumers in Houston, Texas for at least the past three decades.

57.     Fiesta Mart's Licensed Marks reproduce, copy, or colorably imitate Fiesta Mart's federally-registered Trademarks.  Ex. A at Attachment B.

58.     Fiesta Mart terminated its consent for Goose Cap to use Fiesta Mart's Licensed Marks.

59.     Goose Cap's ongoing and continuous unauthorized use of Fiesta Mart's Trademarks and/or Licensed Marks in connection with Goose Cap's ownership and operation of

---

[10] Trademark Nos. 1,293,396; 1,291,516; 1,224,622; 1,300,985; and 1,212,800.

the liquor stores, including on store signs and in advertising materials, is likely to cause confusion, mistake, or deception among Goose Cap's customers, potential customers, and/or the public as to the sponsorship or association of Goose Cap's liquor stores.

60.     Goose Cap is also using counterfeits of Fiesta Mart's active Trademarks listed in Paragraph 23, in connection with the sale, offering for sale, and distribution of goods sold at Goose Cap's liquor stores in violation of Sections 32(1)(b) and 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d).

61.     Goose Cap's conduct creates initial interest confusion by creating a false impression that Fiesta Mart somehow sponsors or is in some way connected with Goose Cap's liquor stores.

62.     Goose Cap's conduct could cause irreparable injury to Fiesta Mart, particularly damage to its goodwill and reputation.   Unless this Court enjoins Goose Cap's wrongful infringement of Fiesta Mart's Trademarks and Licensed Marks, Fiesta Mart will continue to be harmed and Goose Cap will continue to deceive the public.  Fiesta Mart is entitled to injunctive relief under 15 U.S.C. § 1116.

63.     Fiesta Mart has also been damaged by Goose Cap's conduct in an amount to be proven at trial, including treble Goose Cap's profits or treble compensatory damages (whichever is greater), statutory damages, compensatory damages, and attorney's fees and costs under 15 U.S.C. § 1117.

## COUNT II

### UNFAIR COMPETITION (15 U.S.C. § 1125(a)(1)(A))

64.     Fiesta Mart re-alleges and incorporates into count two, paragraphs 1-52.

65.     Goose Cap's ongoing and continuous unauthorized use of Fiesta Mart's Trademarks and/or Licensed Marks, as described above, is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Goose Cap's goods, services, or commercial activities at the liquor stores.  The aforementioned conduct also misrepresents the nature, characteristics, qualities, or geographic origin of Goose Cap's goods, services, or commercial activities at the liquor stores.  This constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

66.     Goose Cap's conduct could cause irreparable injury to Fiesta Mart, particularly to its goodwill and reputation.  Unless this Court enjoins Goose Cap's wrongful infringement of Fiesta Mart's Trademarks and Licensed Marks, Fiesta Mart will continue to be harmed and Goose Cap will continue to deceive the public.  Fiesta Mart is entitled to injunctive relief under 15 U.S.C. § 1116.

67.     Fiesta Mart has been damaged by Goose Cap's conduct in an amount to be proven at trial, including treble Goose Cap's profits or treble compensatory damages (whichever is greater), statutory damages, compensatory damages, and attorney's fees and costs under 15 U.S.C. § 1117.

## COUNT III

## DILUTION UNDER TEXAS LAW

68.     Fiesta Mart re-alleges and incorporates into count three, paragraphs 1-52.

69.     Fiesta Mart's Trademarks are widely recognized by the general consuming public in Texas as a designation of source for Fiesta Mart's services and products.

70.     Through extensive use and promotion, Fiesta Mart's distinctive Trademarks are famous, as defined under Tex. Bus. & Com. Code § 16.103(b), and were famous before Goose Cap's first use of the Licensed Marks.

71.     The similarity between the Licensed Marks and the Trademarks (which are the exact same marks) gives rise to an association between the two marks.

72.     Goose Cap's unauthorized use of Fiesta Mart's Licensed Marks and Trademarks, as described above, is diluting the distinctive quality of Fiesta Mart's Trademarks, as defined under Tex. Bus. & Com. Code § 16.103, and is harming the reputation of Fiesta Mart's Trademarks.

73.     Fiesta Mart has been damaged by Goose Cap's conduct in an amount to be proven at trial, and is entitled to injunctive relief and other remedies, as described under Tex. Bus. & Com. Code § 16.103.

## COUNT IV

## UNFAIR COMPETITION UNDER TEXAS LAW

74.     Fiesta Mart re-alleges and incorporates into count four, paragraphs 1-52.

75.     Goose Cap's actions, as described above, are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Goose Cap's liquor stores with Fiesta Mart, or as to the origin, sponsorship, or approval of Goose Cap, their services/products, and their commercial activities by or with Fiesta Mart such that Goose Cap's acts constitute unfair competition under Texas common law.

76.     Fiesta Mart has been damaged by Goose Cap's conduct in an amount to be proven at trial, and is entitled to injunctive relief and other remedies.

## COUNT V

## BREACH OF CONTRACT

77.     Fiesta Mart re-alleges and incorporates into count five, paragraphs 1-52.

78.     Goose Cap and Fiesta Mart were parties to the Trademark Agreement.

79.     The Trademark Agreement gave Goose Cap a "revocable" license to use Fiesta

Mart's Licensed Marks.  Ex. A at § 1(a), Attachment B.

80.     Because the Trademark Agreement was "indefinite[]" in duration, it was

terminable at will.  Ex. A at § 6(a).

81.     Fiesta Mart properly terminated the Trademark Agreement after providing Goose

Cap written notice.

82.     Goose Cap had actual notice of the termination of the Trademark Agreement, as

well as of Fiesta Mart's exclusive rights in the Licensed Marks after the termination of the

Trademark Agreement.

83.     The Trademark Agreement is also terminable for failure of consideration.  When

Goose Cap acquired the liquor stores from Liquors, Inc., it executed a series of interrelated

agreements with Fiesta Mart, which included the Management Agreement for Fiesta Mart to

manage the liquor stores indefinitely and a Trademark Agreement granting Goose Cap a license

to use Fiesta Mart's Trademarks indefinitely.  Goose Cap did not pay any money to Fiesta Mart

or provide anything else of value to Fiesta Mart when it executed the Trademark Agreement.

Rather, the consideration that Fiesta Mart was supposed to receive from Goose Cap for granting

Goose Cap a "royalty free" trademark license was the ongoing payment of services fees under

the parties' Management Agreement, which had been entered into on the same day as the

Trademark Agreement.  Goose Cap stopped paying Fiesta Mart its service fees in November

21

2017 and the Management Agreement has now terminated effective as of June 15, 2020. Because Goose Cap refused to pay Fiesta Mart the service fees it owed to Fiesta Mart for managing the liquor stores and because the Management Agreement has terminated, depriving Fiesta Mart of the service fees it was entitled to earn in the future for managing the liquor stores, the Trademark Agreement is terminable for lack of ongoing consideration.

84. The Trademark Agreement provides that upon termination of this Agreement, "for any reason, all rights in and to the Licensed Marks granted to Licensee [Goose Cap] under this Agreement shall terminate," Goose Cap "shall have no interest in the Mark," and that Goose Cap must "(i) cease all use of the Mark, (ii) expressly abandon any corporate name registrations of the Mark, and (iii) transfer any domain name registrations incorporating the Licensed Marks to [Fiesta Mart]," as well as deliver to Fiesta Mart within 30 days "a report identifying the inventory of signage and promotional materials bearing the Licensed Marks that [Goose Cap] has on hand as of the date of termination of this Agreement." Ex. A at §§ 3, 6(c). Goose Cap has failed to comply with these provisions of the Trademark Agreement, in breach of that agreement.

85. Goose Cap's breaches of the Trademark Agreement have caused damages to Fiesta Mart in an amount to be proven at trial, including attorneys' fees and expenses. Ex. A at § 8(a).

86. To the extent Fiesta Mart's damages are not compensable by money damages, Fiesta Mart is also entitled to injunctive relief. In the Trademark Agreement, Goose Cap granted Fiesta Mart the right "to seek and obtain injunctive or other equitable relief to prevent [Goose Cap's] violations" of the Trademark Agreement, and also consented to any such injunctive relief "as the court may deem appropriate." Ex. A at § 12(b). Thus, Fiesta Mart is also entitled to

injunctive relief enjoining Goose Cap's wrongful infringement of Fiesta Mart's Trademarks and Licensed Marks.

## JURY DEMAND

87.     Fiesta Mart demands a jury trial as to any and all issues triable to a jury.

## PRAYER FOR RELIEF

Fiesta Mart respectfully requests that this Court award the following relief:

1.      An order enjoining Goose Cap and any of its owners, members, officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors and assigns, and all those persons in concert or participation with any of them, and any entity owned or controlled in whole or in part by any of the Goose Cap, from:

   a. Imitating, copying, or making any unauthorized use of a Licensed Mark or Trademark in connection with any goods, businesses, or services offered by Goose Cap or the advertising or promotion thereof;

   b. Using a Licensed Mark or Trademark to refer to or describe any products, goods or services offered by or on behalf of Goose Cap or any individual, entity or other third party affiliated with Goose Cap;

   c. Using a Licensed Mark or Trademark in or as part of any domain name, keyword, metatag, source code or other Internet search term, or otherwise using a Licensed Mark on or in connection with any website owned or controlled by Goose Cap;

   d. Using a Licensed Mark or Trademark in connection with the promotion, advertisement, display, sale, or offering for sale of any product or the provision of any goods or services; and

e.   Using in any manner in a business or in connection with any products, services or business, or the advertising or promotion thereof, directly or indirectly, a Licensed Mark or Trademark in such a fashion;

2.      A judgment and order requiring Goose Cap to pay Fiesta Mart punitive, statutory, and actual damages, attorneys' fees and costs, and prejudgment and post-judgment interest as allowed by law; and

3.      A judgment for any such other and further relief as the Court deems just and equitable.

Dated: September 25, 2020                          Respectfully submitted,

                                                  SIDLEY AUSTIN LLP

                                                  */s/ Tung T. Nguyen*
                                                  Tung T. Nguyen
                                                  State Bar No. 24007745
                                                  tnguyen@sidley.com
                                                  SIDLEY AUSTIN LLP
                                                  2021 McKinney Avenue, Suite 2000 Dallas,
                                                  Texas 75201
                                                  Telephone: (214) 981-3478
                                                  Facsimile: (214) 981-3400

                                                  Thomas K. Cauley Jr. (*pro hac vice
                                                  application forthcoming*)
                                                  Illinois Bar No. 6185259
                                                  tcauley@sidley.com
                                                  Steven E. Sexton (*pro hac vice application
                                                  forthcoming*)
                                                  Illinois Bar No. 6287356
                                                  ssexton@sidley.com
                                                  One South Dearborn
                                                  Chicago, IL 60603
                                                  Telephone: (312) 853-7000
                                                  Facsimile: (312) 853-7036

                                                  **ATTORNEYS FOR PLAINTIFF**